IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN CASHMAN, | )<br>) |
| Plaintiff, | ) Civil Action No. 8-5102<br>) |
| v. | )<br>) Honorable Judge Thomas Golden |
| CNA FINANCIAL CORP., | )<br>) |
| and | )<br>) |
| CONTINENTAL CASUALTY COMPANY, | )<br>) |
| Defendants. | )<br>) |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION FOR PERMISSION TO REVIEW THE
DEPOSITION TRANSCRIPT OF TIMOTHY WOLFE
AND TO FILE AN ERRATA SHEET PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 30(E)**

Defendants CNA Financial Corporation,[1] and Continental Casualty Company (herein collectively "CNA" or "Defendants"), hereby file their Brief in Support of Their Motion for Permission to Review the Deposition Transcript of Timothy Wolfe and to File an Errata Sheet Pursuant to Federal Rule of Civil Procedure 30(e) (herein "Rule 30(e)"). In support thereof, CNA avers as follows:

**I. FACTS**

Plaintiff John Cashman (herein "Cashman"), filed a lawsuit against CNA alleging, *inter alia*, that CNA discriminated against him based on his age and alleged disability. One of Cashman's contentions is that his supervisor, Timothy Wolfe (herein "Wolfe") put him

---

[1] CNAF is a holding company, does not have employees and is not a proper defendant in this matter.

1

on a Level 4 Performance Improvement Plan (herein "PIP")[2] in an attempt to force him to retire. This necessarily makes Wolfe a principal witness in this case.

Cashman took Wolfe's deposition on May 20, 2009. (Ex. A) Counsel for CNA received the transcript on June 11, 2009. (Ex. B) Upon reviewing it, counsel realized that, in response to the parties' agreement at the beginning of the deposition to the "usual stipulations," the court reporter recorded the following statement:

> (It is hereby stipulated by and between counsel that the reading, signing, sealing, certification and filing are waived; and that all objections, except as to the form of the question, are reserved until the time of trial.)

(Ex. A, p. 6)

Indeed, Counsel for CNA received an e-mail from the court-reporting service, acknowledging that the language quoted above was entered by the court report in response to an agreement at the beginning of the deposition to the "usual stipulations." (Exhibit C) Counsel for CNA did not intend for "the usual stipulations" to include waiver of the right to read, sign, seal, certify and file the transcript. (Affidavit of Richard A. Kaminsky (herein "Kaminsky Aff."), attached as Exhibit D ¶ 8; Affidavit of Richard J. Antonelli (herein "Antonelli Aff."), attached as Exhibit E ¶ 8) It would make no sense for any party to waive the review and signing of a deposition transcript before the deposition has taken place. In fact, Richard A. Kaminsky (herein "Kaminsky"), and Richard J. Antonelli (herein "Antonelli"), counsel for CNA who attended Wolfe's deposition, have collectively 67 years of experience practicing law; neither one has ever heard or understood the phrase "the usual stipulations" to be interpreted this way. (Kaminsky Aff. ¶ 9; Antonelli Aff. ¶ 7) Nor has

---

[2] A Level 4 PIP indicates that the employee's performance is not acceptable for the requirements of the position, and gives the employee a period of time to bring his or her performance back to an acceptable level.

2

this stipulation been included in any of the other depositions taken in this matter. Further, Antonelli specifically told the court reporter at the end of the deposition, and Kaminsky specifically heard Antonelli say, that Wolfe would read and sign the transcript. (Kaminsky Aff. ¶ 11; Antonelli Aff. ¶ 10) This statement at the end of the deposition is not reflected in either the transcript or in the incomplete and sometimes inaudible audio tape of the deposition received from the court reporter.

Aside from the fact that counsel did not waive signature, the 249 page transcript contains at least 26 errors, four of which change the substance of Wolfe's testimony. For example, the court reporter added "if" to the following sentence: "I-Track had to be updated appropriately, *if* there was an area there that covered what we call DOI." (Ex. A, p. 29, lines 23-25) She also omitted the word "not" in the following sentence: "I was able to see that not only was he *not* really reviewing the file properly as he should . . ." (Ex. A, p. 209, lines 7-9) She further recorded, "that's not *in*accurate, instead of "that's not accurate." (Ex. A, p. 238, line 10) The most problematic mistake, though, was related to Wolfe's alleged reason for putting Cashman on the PIP:

> Q. After you put Mr. Cashman on a PIP, did you remove any files from his care?
> 
> A. I had asked John to clean up his caseload.
> 
> Q. That was in November?
> 
> A. Actually, he was placed on the [Performance Improvement Plan] on the 19th, I believe.
> 
> Q. Of September?
> 
> A. Of September, right, the 19th of September. The 20th was when he enacted his retirement.
> 
> Q. Do you think the [Performance Improvement Plan] had anything to do with it?
> 
> A. Most likely, yes.

3

> Q. Was that your goal in giving him a [Performance Improvement Plan]?
>
> A. *No, it was.*
>
> Q. Well, aren't you graded on getting voluntary retirement?
>
> \*   \*   \*
>
> A. No

(Ex. A, pp. 214, lines 8 -24 to p. 215, lines 2, 7, emphasis added)

Wolfe actually stated "No, it wasn't." Taken in context and in conjunction with the rest of his testimony, it is clear that Wolfe said "No, it wasn't." That is, he did not put Cashman on the PIP in an attempt to force him to retire. Wolfe's proposed Errata Sheet, attached hereto as Ex. F, reflects this. Moreover, Donna L. Abboud (herein "Abboud"), Director of Litigation Support for Veritext National Court Reporting Company (herein "Veritext") provided all parties with the audiotape of the deposition. While, as discussed below, some portions of the tape are inaudible or incomprehensible, this portion is not. On the tape, Wolfe states, "No, it wasn't." Defendants have provided this audiotape for the Court's review.

Without an Errata Sheet, however, a counterintuitive, tortured reading of the statement, taken out of context, conceivably could result in the opposite meaning. Therefore, CNA's counsel notified Abboud of these issues on Friday, June 19, 2009. She responded on Monday, June 22, 2009, that Wolfe could read and sign the transcript if all parties consented. Counsel for Cashman refused, stating:

**From:** Carmen Matos Law Offices [mailto:crm617@aol.com]
**Sent:** Monday, June 22, 2009 7:25 PM
**To:** 'Donna Abboud'
**Cc:** afalawyer@comcast.net; Antonelli, Richard J.; Dick-Hurwitz, Rebecca
**Subject:** RE: John Cashman v. CNAF - Deposition of Timothy Wolfe

Plaintiff's counsel does not agree. It was clearly on the record that read and sign was waived.
Mrs. Matos

Law Offices of Carmen R. Matos
40 East Court Street, 3d Floor
Doylestown, PA 18901
215-345-8550
215-345-8551 fax
crm617@aol.com
www.carmenmatoslaw.com

(Ex. C, p. 1)

Because Cashman's counsel will not agree to allow Wolfe to correct this or any other misrecorded testimony, and in light of the fact that Wolfe did not waive the right to review and correct the transcription of his testimony, CNA respectfully requests leave of court to file an Errata Sheet correcting Wolfe's deposition testimony.

## II.   ARGUMENT

### A.   CNA's Request is Timely

Under Federal Rule of Civil Procedure 30(e), the parties are allotted 30 days in which to submit an Errata Sheet:

> Rule 30. Deposition by Oral Examination
>
> \*   \*   \*
>
> e) Review by the Witness; Changes.
>
> **(1) Review; Statement of Changes.**

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Federal Rule of Civil Procedure 30(e).

As stated, both Kaminsky and Antonelli have testified under oath that Antonelli made this request. (Kaminsky Aff. ¶ 11; Antonelli Aff. ¶ 10). CNA's counsel received the transcript on June 11, 2009 and notified the court reporter within 8 days that Wolfe needed to file an Errata Sheet. (Exs. B, C2) Moreover, this Motion, with the Errata Sheet attached, has been filed within 20 days of receipt of the transcript. Thus, CNA's request is timely.

**B.     The Court Reporter's Multiple Mistakes During The Course Of The Deposition Entitles Wolfe To Review The Transcript And File An Errata Sheet**

**1.     The transcript contains multiple mistakes**

As stated, Wolfe's deposition transcript contains at least 26 mistakes. Some of them are significant. The fact that the transcript of Wolfe's testimony is so unreliable illustrates the importance of filing an Errata Sheet.

**2.     The court reporter indicated after the deposition that Wolfe's accent was at times difficult to understand**

Wolfe has a British accent which the court reporter admitted made his testimony difficult to understand. (Ex. G) This may explain in part why she made so many mistakes throughout the deposition transcript. (Ex. F) At no time during the deposition, however, did she give Wolfe any indication that she was having a problem.

Given the court reporter's admission that she might not have understood Wolfe, Wolfe should be able to correct her multiple errors with an Errata Sheet.

### 3. The audiotape Veritext produced is unreliable

#### a) The audiotape Veritext produced is incomplete

Counsel for CNA realized immediately that most of Wolfe's testimony was missing from the audiotape Veritext produced. When Abboud was questioned, she admitted that:

> The first tape (beginning of the deposition)
> had been recorded over by the reporter
> before we asked for the audio of this
> deposition.

(Ex. H)

More specifically, the audiotape does not begin until page 210, line 14. It continues to page 247, line 8, but skips pages 247, line 15 to 249, line 3. The audiotape concludes with page 249, lines 4 to 11. It is impossible, therefore, to verify much of what was said on the record.

#### b) Some of the audiotape Veritext produced is incomprehensible

Some portions of the audiotape that was provided are incomprehensible. It is usually clear that someone is speaking, but it is sometimes impossible to understand what they are saying. This, too, should entitle Wolfe to review the transcript and to file an Errata Sheet.

### 4. The Court Reporter did not comply with Rule 30(b)(5)(C)

The fact that the court reporter did not comply with Federal Rule of Civil Procedure 30(b)(5)(C) (herein "Rule 30(b)(5)(C)") is further cause to allow Wolfe to file an Errata Sheet. That Rule requires:

>Rule 30. Deposition by Oral Examination
>
>\* \* \*
>
>(b) Notice of the Deposition; Other Formal Requirements.
>
>\* \* \*
>
>**(5) Officer's Duties.**
>
>\* \* \*
>
>**C)** *After the Deposition.* **At the end of a deposition, the officer must state on the record that the deposition is complete and must set out any stipulations made by the attorneys about custody of the transcript or recording and of the exhibits, or about any other pertinent matters.**

Federal Rule of Civil Procedure 30(b)(5)(C). The court reporter was obligated by Rule 30(b)(5)(C) to make a statement on the record at the end of the deposition advising the parties of their right to read and sign the transcript. She did not do so. Kaminsky Aff. ¶ 10; Antonelli Aff. ¶ 9) CNA was not responsible for her failure, and should not be penalized for it.

In short, much of the audiotape is missing, some portions are incomprehensible, the court reporter admits that she could not always understand Wolfe's accent, there are a multitude of errors, and the court reporter did not comply with Rule 30(b)(5)(C). These mistakes should entitle Wolfe to read and sign the transcript, particularly since his counsel made a specific request to do so at the end of the deposition.

### C. CNA Will Be Seriously Prejudiced If Cashman Cites This Testimony In Its Present Form And Without A Sworn Correction

It is evident that CNA will be prejudiced if, through a transcription error, the transcribed response, "No, it was" instead of the correct "No, it wasn't" in response to Wolfe being asked whether Cashman was placed on a performance improvement plan with the goal of getting Cashman to retire, is allowed to remain unchanged. Again, taken in context, and as evidenced by one of the clearer portions of the audiotape of the deposition, it is clear that he testified, "No, it wasn't." If this testimony is exploited by Cashman's counsel, however, it could be made to appear that Wolfe is admitting to discrimination and Wolfe will have to explain, perhaps ultimately to a jury, that this was the court reporter's error, not his actual testimony, and would further have to explain why that testimony was never corrected. Given the potential for serious abuse and prejudice, the Court should allow Wolfe to file an Errata Sheet.

### D. Cashman Will Not Be Prejudiced If Wolfe Corrects What Is Obviously A Typographical Error

Cashman will not be prejudiced if the Court allows Wolfe to file an Errata Sheet. The only possible argument Cashman can make is this: If the Court grants CNA's Motion, Cashman will be unable to benefit from the court reporter's errors. Consequently, filing an Errata Sheet will not result in prejudice to him.

Because of the multiple errors Wolfe's transcript contains, at least one of which changes the meaning of critical testimony, the Court should allow Wolfe to file an Errata Sheet to his deposition transcript.

### III.   CONCLUSION

WHEREFORE, Defendants CNA Financial Corporation and Continental Casualty Company respectfully request that this Court allow Timothy Wolfe to file the attached Errata Sheet to his deposition transcript.

Dated: July 2, 2009

Respectfully submitted,
BABST, CALLAND, CLEMENTS
& ZOMNIR, P.C.

*/s/ Rebecca J. Dick-Hurwitz*

Richard J. Antonelli
PA ID No. 22121
rantonelli@bccz.com
Rebecca J. Dick-Hurwitz
PA ID No. 62943
rdick-hurwitz@bccz.com
Two Gateway Center, 7th Floor
Pittsburgh, PA  15222
412-394-5400
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, 2009, I electronically filed the foregoing Defendants' Brief in Support of Their Motion for Permission to Review the Deposition Transcript of Timothy Wolfe and to File an Errata Sheet Pursuant to Federal Rule of Civil Procedure 30(e), with the Clerk of Court using the CM/ECF system which will send notification to the following

        Carmen L. Rivera Matos
        CRM617@aol.com
        Anita Alberts
        afalawyer@comcast.net
        40 East Court Street, 3d Floor
        Doylestown, PA 18901

                *s/ Rebecca J. Dick-Hurwitz*
                Counsel for Defendants