# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN CASHMAN** | : | |
|     Plaintiff | : | |
| v. | : | **Civil Action No. 08-5102** |
| | : | |
| **CNA FINANCIAL CORP,** | : | |
|     and | : | |
| **CONTINENTAL CASUALTY COMPANY,** | : | |
|     Defendants | : | **JURY TRIAL DEMAND** |

## ORDER

And Now, upon consideration of the Plaintiff's Motion to Compel, it is hereby ordered that Plaintiff's motion is GRANTED. Within ten (10) days, defendants will produce to Plaintiff the outstanding discovery.

Date: _____

                                                                     U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CASHMAN | : | |
|     Plaintiff | : | |
| v. | : | **Civil Action No. 08-5102** |
| | : | |
| CNA FINANCIAL CORP, | : | |
|     and | : | |
| CONTINENTAL CASUALTY COMPANY, | : | |
|     Defendants | : | **JURY TRIAL DEMAND** |

**PLAINTIFF'S FIRST MOTION TO COMPEL**

Plaintiff, John Cashman, hereby moves this Honorable Court for a Motion to Compel based on the reasons asserted in Plaintiff's Brief in Support of Motion to Compel and exhibits attached thereto.

                                                        Respectfully submitted,

Date: August  24, 2009                         _____
                                                       Carmen R. Matos, Esquire
                                                       Anita F. Alberts, Esquire
                                                       Attorney for Plaintiff,
                                                       John Cashman

                                                       Law Offices of Carmen R. Matos
                                                       40 East Court Street, 3d Floor
                                                       Doylestown, PA  18901
                                                       (215) 345-8550
                                                       (215) 345-8551 facsimile
                                                       crmatoslaw@aol.com
                                                       afalawyer@comcast.net

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN CASHMAN** | : | |
| Plaintiff | : | |
| v. | : | **Civil Action No. 08-5102** |
| | : | |
| **CNA FINANCIAL CORP,** | : | |
| and | : | |
| **CONTINENTAL CASUALTY COMPANY,** | : | |
| Defendants | : | **JURY TRIAL DEMAND** |

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS FIRST MOTION TO COMPEL**

A. <u>**INTRODUCTION**</u>

On February 13, 2009 plaintiff mailed his First Interrogatories and Requests for Documents to Defendants. On March 27, 2009, defendants provided their initial response. **Exhibit 1**. On April 27, 2009, plaintiff's counsel wrote to the defense to advise of deficient responses and evasive answers. **Exhibit 2**. On May 28, 2009, defendant responded providing some information refusing to provide other information. **Exhibit 3**. On July 29, 2009, plaintiff again advised defendants that there were still many documents not produced. **Exhibit 4**. On August 14, 2009 defendant responded but still refused to provide much of the information requested. **Exhibit 5**. Defendant produced a great amount of redacted documents without noting a redaction, and even produced blank documents. See **Exhibit 12**. Plaintiff's counsel has attempted by written letters to obtain the outstanding discovery but believes any further efforts are futile. See Certification of Counsel. **Exhibit 6**.

B. <u>**FACTS**</u>

Mr. Cashman filed this suit alleging that defendants forced him to retire based on his age (59), disability (cancer), retaliation, and interference with FMLA rights. Mr. Cashman was hired in 1992 as a Claims Investigator of fraud cases in CNA's Special

2

Investigations Unit (SIU) which is a part of the Claims Department . Prior to CNA, Mr. Cashman worked in the Philadelphia Police Department as a police officer and detective for about 24 years.   Mr. Cashman was a diligent employee, earned favorable reviews, increases and bonus throughout his employment with Defendants.  He was promoted to Team Leader in 1997 and received above expectations ratings from 1993 through 2002.  From 1992 to 2002, Mr. Cashman reported to Richard Carroll, then SIU Manager, and received above satisfactory ratings.  In 2002, Stephen Lilienthal became the new CEO and Chairman.  Mr. Lilienthal spoke at a 2002 quarterly leadership meeting to challenge the company managers with the directive, "We need to get kids in here."  Lilienthal's directive was also transmitted by intranet to the workforce.  After 2002, Mr. Cashman's ratings were marked down to "3" or meets expectations.

In 2005, the SIU was restructured.  Timothy Wolfe became the Manager reporting to the SIU Director, James Bonk.  As SIU Director, Bonk managed four teams consisting of less than thirty employees:  Fraud ID & Prevention, Triage, Major Investigations, Fraud Case Management. Bonk had four direct reports: William Murdoch (Triage Manager); James Lumley (Fraud Identification and Prevention Unit); Marvin Barber (Major Investigations Manager) and Timothy Wolfe (Fraud Case Manager). Murdock had seven employees reporting to him; Lumley had four; Barber had three, and Wolfe had six. Defendant unilaterally limited the scope of discovery to the six persons reporting to Wolfe, as if the SIU was isolated in a single, small room. See Organizational Chart attached hereto as **Exhibit 7**.

In 2004, Mr. Cashman was diagnosed with bladder cancer and required time off for surgery and treatment.  In September 2005 Wolfe became Mr. Cashman's supervisor in the

3

Special Investigations Unit (SIU). Wolfe worked in San Francisco while Mr. Cashman worked in Reading PA.

In September 2005, Mr. Cashman suffered a recurrence of cancer requiring more surgery and chemotherapy. After September 2005, Mr.Cashman's work was more closely scrutinized than ever before. Mr. Cashman took off most of December 2005 due to his disability and returned to work on January 3, 2006.  In March 2006 Mr. Cashman received a performance rating of "3" or "meets requirements"  and received a bonus incentive of $4300.   Discovery revealed that Mr. Cashman was given a higher rating of "2" from his supervisor Gary Traina who supervised him for 9 months in 2005 and that Wolfe, who supervised Mr. Cashman for less than two months in 2005, rated Cashman "3." **Exhibit 8 (Wolfe Dep P. 10-11**.)  In May 2006, Mr. Cashman advised his supervisor that he needed another course of chemotherapy throughout the month of June and early July due to a second recurrence of the cancer.  Also in May 2006 defendants requested additonal staff for the (SIU) due to the illness of some staff including Mr. Cashman.

Mr. Cashman received monthly reviews from Wolfe, which required a standard of compliance of 95%.  When Wolfe was deposed he testified that he deleted the records on which plaintiff's compliance rating was based. **Ex 8 p**. 27, 32, 54, 60.  Mr. Cashman contends that his performance was satisfactory. In early September 2006 Mr. Cashman needed more cancer treatment including surgery and duly notified Wolfe.  On September 18, 2006, a 39 year old employee who had been laid off the prior year, Douglas Breit, was rehired for an SIU investigator position, the same job Mr. Cashman held at the time. The younger Breit received training for his position while Mr. Cashman did not.  The training involved new systems used by the SIU since the new model was instituted in September

2005.  On September 19, 2006, suddenly and without warning, Wolfe placed Mr. Cashman on a PIP or performance improvement plan for false reasons related to file documentation. Wolfe read the PIP to Mr. Cashman over the phone from San Francisco; HR official Betsy Mansfield was on the phone in Chicago, while Leslie Curran, local HR attended the phone conference in Reading.  The 95% compliance issue was not mentioned in the PIP, and Mr. Cashman's cycle time was better than at least one younger employee, Picard, 10 years younger. When the younger Breit assumed the position, he did not receive regular monthly reviews as Mr. Cashman did.  On September 20, 2006 one day after the PIP, under duress of illness and the surprise of the PIP and his disability, Mr. Cashman believed he had no choice but to retire. Immediately after Cashman said he would retire, Wolfe stopped all criticism of Mr. Cashman's work and told him to handle all cases as he usually did until further notice because he trusted him to handle the files appropriately.  **Exhibit 8** p.180-1.  After recovery from surgery, in October 2006, Mr. Cashman rescinded his retirement decision, simultaneously complaining of age and health discrimination. Defendants refused to acknowledge his rescission and forced plaintiff to retire on November 3, 2006.  When Mr. Cashman asked about any other position, Wolfe told him there were no jobs for him but later hired new younger investigators.  Shelley Liapes, VP of Employee Relations, testified that Mr. Cashman told her on November 6, 2006, that Mr. Wolfe said "it gets tough as you get older"  **Exhibit 9** P. 27. She told Cashman she would "investigate" his discrimination claim but did not.

## C. ARGUMENT

Pursuant to Rule 26(b)(1), F. R. C. P. a party is entitled to discover "any matter, not privileged, which is relevant to the subject matter in the pending action." The information

sought need not be admissible at trial if it is reasonably calculated to lead to admissible evidence. Sempier v. Johnson, 45 F. 3d 724, 734 (3d Cir. 1995).

**1. Interrogatories**

**Interrogatory No. 7** requests that defendant "**Provide the name, date of birth, job, of all exempt employees who were employed in the Special Investigations Unit from 2002 to present (reporting to SIU Director)."**

Defendant objects on the grounds of relevance stating that Cashman has not established that all exempt employees in his unit reporting to the same director, James Bonk, are similarly situated. Defendant cites Monaco v. American General Assurance Co., 359 F.3d 206 (3d Cir. 2004). Without waiving its objection, defendant provided limited information as to 3 units of the SIU, but refused to provide information as to the 4th unit known as Triage. According to defendant's documents all four units (Fraud ID & Prevention, Triage, Major Investigations and Fraud Case Management) reported to the same SIU Director: James Bonk. See **Exhibit 7 (bate stamp 000038).**

**Plaintiff believes the information is relevant and reasonably calculated to lead to the discovery of admissible evidence. It is clear from defendants' charts that four units reported to the same supervisor, James Bonk, SIU Director. In Mendlesohn v Sprint , the court held that** ." Evidence that the defendant terminated other employees in the protected age group in Plaintiff's department, is relevant to the issue of whether defendant discriminated against plaintiffs due to their age. Sprint v. Mendelsohn,- U.S.-, 126 S.Ct. 1140 (2008) (no per se rule excluding evidence of other employees in the protected group who were discriminated against because of age even if different supervisors); Bruno v. WB Saunders 882 F.2d 760 at 767, citing McDonnell Douglas Corp v. Green, 411 US at 804-805 (1973) ("Other evidence that may be relevant to any

6

showing of pretext includes facts as to the petitioner's treatment of respondent during his prior term of employment; petitioner's reaction, if any, to respondent's legitimate civil rights activities; and petitioner's general policy and practice with respect to minority employment.").

Here, Mr. Cashman is not comparing himself to lower level employees but to the employees in the SIU Department all reporting to Bonk. Mr. Cashman's interrogatory is narrowly tailored to his department in order to review the ages and job titles of the department from the time that CEO Lilienthal announced he was going to hire kids (2002) through the present time (2009). There is one sheet of paper at CNAF that is known as Current Employee Information for each employee. This shows the employee personal information, address, date of birth, organizational information, job information, salary information, status and performance information. See **Exhibit 10** (Cashman's Current Employee Information bate stamp CNAJCDP00542). In addition, CNA has records that show "lists of employees and former employees, known as termination reports, for example, new hire reports." See **Exhibit 11 Mansfield Dep 59-60.** Ms. Mansfield testified she has access to these reports including the SIU which is part of the Claims organization. **Exhibit 11 p 18, 60-61.** She testified that the reports are used for "analysis of why people are leaving the organization would be the reason for the termination" and the reports include the job title, name of employee, date of hire and reason for leaving, and date of separation."[1] **Exhibit 11 at p 61.** This data is relevant to the claims in this case including whether the age of the department has increased or

---

[1] Defendant states that HR Manager Mansfield does not have documents responsive to this interrogatory in her possession, custody or control. Mansfield stated she had "access" to such data, indicating that defendants do have it. Defendants response is clearly evasive.

decreased.  **See also Complaint No. 79.**  Bruno v. WB Saunders 882 F.2d 760 at 767 (3d Cir. 1989)(statistical evidence may bolster the plaintiff's case that the defendants' articulated reason for an individual employment decision is a pretext).  Plaintiff's request for statistical evidence is amply supported by the case law.  Burns v. Thiocol Chemical Corp. 483 F.2d 300 (5th Cir. 1973) (district court's denial of statistical evidence extremely prejudicial to plaintiff requiring reversal and remand for new trial).  Defendants have records showing the information requested, they simply don't want to produce them.

**Interrogatory No. 8**:  This interrogatory requests, "**For each calendar year since January 1, 2002 to present identify all SIU employees who were placed on a performance improvement plan (PIP) by name, date of birth, date of hire, job status (active or inactive) and reason for separation if applicable.  Please identify those who were terminated as a result of the PIP.**

Defendants object to the above information based on Carroll's testimony that Bonk told him to PIP (which he identified as an action plan) Cashman in 2004 for the false reason of excess mileage. The testimony defendant refers to merely relates to the issue of whether Director Bonk ordered Carroll to place Cashman on a PIP and whether Carroll's refusal to PIP Mr. Cashman in 2004 led to Carroll's discharge.  Bonk stated he "did not believe so" when asked if he told Carroll to PIP Mr. Cashman for alleged excess mileage.  This has nothing to do with the request of plaintiff  to "**identify all SIU employees who were placed on a performance improvement plan (PIP) by name, date of birth, date of hire, job status (active or inactive) and reason for separation if applicable."**  This is a reasonable request as the company used the PIP technique to achieve a "voluntary turnover" by early retirement. The goal was 10% per year. Moreover, Plaintiff's request is narrowly tailored to the SIU Department and whether other persons in that department were PIP'd as he was.

Discovery did show that Bonk directed Cashman's PIP in 2004 and 2006 as well as Traina's and Carroll's. See <u>Gaul v. ZEP</u>, 2004 US Dist LEXIS 1990 at page 6, where the court allowed plaintiff's discovery of personnel files of managers who held the position of Branch Sales Managers. Defendant's response is clearly evasive.

**Interrogatory No. 18** requests that defendant "**Provide the name, date of birth, date of hire of each SIU Investigator employed by the defendant since 2002 to the present**."

Defendants respond that the information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants' response is clearly evasive. Defendant improperly limited the scope of discovery to Mr. Wolfe's 6 (six) SIU consultants. The SIU consisted of less than 30 employees (including Wolfe's reports) reporting to Bonk, according to **Exhibit 7 (CNA 000038).** Plaintiff is entitled to information relating to any SIU employees under Bonk so as to analyze the age of the workforce. <u>Bruno v. WB Saunders</u> 882 F.2d 760 at 767 (3d Cir. 1989). Statistical evidence may bolster the plaintiff's case that the defendants' articulated reason for an individual employment decision is a pretext. In <u>Getz v. Commonwealth of Pennsylvania</u>, 1998 US Dist LEXIS 20260 (ED Pa. 1998), Judge Hutton held that "Evidence which tends to show that persons not in the protected group were treated more favorably by defendant may be used as evidence of discrimination. Statistical evidence regarding the hiring and firing patterns of the defendant may be relevant to make such a demonstration." <u>Id.</u> at p 7. <u>Sosky v IMS</u>, 1995 US Dist LEXIS 8507 (E.D. Pa. 1995)(court rejected narrow sample suggested by defendant and allowed more reasonable pool). Here the defendant wants to unilaterally limit the scope. A more reasonable approach is the SIU department, which includes about 30 employees. Prior to

9

depositions, defendants claimed there were three times that number, in refusing discovery, but later abandoned that claim but still refused to provide the information.

**2. First Document Requests**

**RFP 5** requests **"personnel records of other SIU employees including but not limited to performance reviews, salary history, bonus incentive, discipline, PIP, monthly file results, monthly performance metrics for time period 2002 to August 2006."**

No PIPs were produced, as if plaintiff were the only employee subjected to an action plan and forced to leave work. Defendant only responds that the salary of Mr. Cashman's co-workers is not relevant because Mr. Cashman did not make a claim for equal wages and simply avoids answering the remaining part of the interrogatory. Plaintiff argues that there are simple records that may be produced such as the "Current Employee Information" attached hereto as **Exhibit 10**. Moreover, plaintiff responds that the salaries are relevant. Defendants provide some bonus incentive information for 2007 and 2008 (only for the six employees reporting to Wolfe) but redacted in totality all the salary information that it has. Plaintiff argues that defendants have evaded this RFP. Salary information may lead to the discovery of admissible evidence as to damages. Rule 26 F.R.Civ. Procedure. Hall v. Harleysville Ins. Co., 164 F.R.D. 406, 407 (E.D. Pa. 1996). In Katrina Northern v. Philadelphia Fire Department, 2000 US Dist LEXIS 4298 (E.D. 2000), Judge Broderick granted plaintiff's motion to compel defendant to produce damage information related to compensation. Id at 8.

Recently, in Donlin v. Philips Lighting North America, 564 F.3d 207 (3d Cir. 2009), the Third Circuit held:

> We have held that for the purpose of determining *liability* in discrimination suits, a plaintiff "cannot selectively choose a comparator." *Simpson v. Kay Jewelers,* 142 F.3d 639, 645 (3d Cir.1998). In *Simpson,* the plaintiff relied solely on one employee as a comparator in arguing that she was treated less favorably than her colleagues. *Id.* at 646. We held that Simpson's approach was too narrow and that she "cannot pick and choose a person she perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than she." *Id.* at 646-47. Though *Simpson* concerned comparisons for the purpose of determining liability, **we find that principle applicable in the damages context as well**. Thus, we agree that Donlin could not "pick and choose" a damages comparator; rather, a Title VII plaintiff must choose similar employees against whom to compare herself.
>
> Under that principle, we disagree that Matusick was an inappropriate basis of comparison. Although Matusick was long-tenured, the record evidence shows that Philips did not increase its employees' salaries based on seniority. Additionally, there was evidence that Donlin and Matusick worked the same shift and worked similar amounts of overtime, both of which were key factors affecting compensation. Indeed, the District Court found as a matter of fact that Matusick was "an average employee with similar work habits and pension information." Damages Memorandum at *3. Furthermore, the nine men Philips hired in lieu of Donlin would not have made good comparators because of their idiosyncratic employment histories. Specifically, the record shows that the men had quit, died, refused overtime, worked on different shifts, or had long periods of disability. **Accordingly, on remand the District Court may determine Donlin's compensatory damages by comparing her to Matusick or any other Philips employee with similar characteristics**.

According to Donlin, the salary information of other employees in Plaintiff's unit is relevant, and must be produced by defendant. Id.

**RFP 32 Any documents showing salaries and bonuses of SIU investigators from 2004 to present.**

Defendant unilaterally decided to produce only bonus information. All salary and contact information has all been redacted. According to Donlin, the salary information of other employees in Plaintiff's unit is relevant, and must be produced by defendant. Id.

11

See also  Katrina Northern v. Philadelphia Fire Department, 2000 US Dist LEXIS 4298 (E.D. 2000), where Judge Broderick granted plaintiff's motion to compel defendant to produce damage information related to compensation.  Id at 8.

**RFP 52 Taylor investigation.**  Defendant's objection is mere sarcasm claiming just because we can attack Wolfe's credibility does not allow unfettered access to any document. Plaintiff believes Mr. Taylor may have complained of excess mileage reimbursements claimed by Wolfe.  Mr. Carroll testified he was instructed by Bonk to PIP Mr. Cashman for excess mileage claims.  This makes it relevant.

**RFP 61 All reports or documents showing employee turnover for 2005 to present for SIU. RFP 62 Termination Reports 2005 to present (Mansfield Dep) RFP 63 New Hire Reports 2005 to present (Mansfield Dep)**

**RFP 61, 62 and 63** are actually similar to the statistical information requested in Interrogatory **8, 18** and RFP **5**.  Ms. Mansfield actually admitted that the information is available and accessible.    Plaintiff's request for statistical evidence is amply supported by the case law.  Burns v. Thiocol Chemical Corp. 483 F.2d 300 (5th Cir. 1973) (district court's denial of statistical evidence extremely prejudicial to plaintiff requiring reversal and remand for new trial).   Turnover is a recurrent topic in CNAF management programs. Defendants produced copies of  many presentations picturing the handing over of the baton in a relay race, emphasizing the corporate goal of achieving 10% "voluntary turnover" annually. Wolfe's performance evaluations mention his achieving this goal.  **Ex. 8, p 160-161**. Plaintiff's initial retirement decision during  his illness in September 2006 was sent directly to VP Liapes and Wolfe was promoted soon after, taking Bonk's job. Bonk also "retired" in 2006, as did Gary Traina, after a PIP.  This is crucial discovery. Plaintiff is entitled to it.

**D. CONCLUSION**

  Based upon the above, plaintiff believes that the court should order defendants to produce the outstanding discovery and the redacted information requested herein.

8/24/09               Respectfully submitted,

                /s/ Carmen R. Matos, Esquire
                Anita Alberts, Esquire
                Law Offices of Carmen R. Matos
                40 East Court Street, 3d Floor
                Doylestown, PA  18901
                (215) 345-8550
                (215) 345-8551 fax
                Attorneys for Plaintiff, Mr. John Cashman

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the following legal papers were served upon:

Richard Antonelli, Esquire
Rebecca Dick-Hurwitz, Esquire
Babst, Calland, Clements, Zomner
Two Gateway Center
Pittsburgh, PA  15222
rantonelli@bccz.com
rdick-hurwitz@bccz.com

in the following manner:

| | |
|---|---|
| Legal Papers: | Plaintiff  First Motion, Brief in Support of Motion to Compel |
| Manner: | ECF |
| Legal Papers: | Exhibits by Mail |
| Date: August 24, 2009 | By/s/_____<br> Carmen R. Matos, Esquire<br> Attorney for  Plaintiff<br> Mr.  John Cashman |

13