**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN CASHMAN** | : | |
| Plaintiff | : | |
| v. | : | **Civil Action No. 08-5102** |
| | : | |
| **CNA FINANCIAL CORP,** | : | |
| and | : | |
| **CONTINENTAL CASUALTY COMPANY,** | : | |
| Defendants | : | **JURY TRIAL DEMAND** |

**PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Defendants ignore the Third Circuit and the Supreme Court law defining employment discrimination,

> Particularly in the discrimination area, it is often difficult to determine the motivations of an action and any analysis is filled with pitfalls and ambiguities. A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario. <u>Andrews v. City of Philadelphia,</u> 895 F.2d 1469 (3d Cir. 1990)

Discrimination cases should not examine each alleged incident in a vacuum. <u>Id.</u>, <u>citing</u> <u>Vance v. Southern Bell Tel. and Tel. Co.</u>, 863 F.2d 1503, 1510 (11th Cir. 1989).  Defendants attempt to have this Court review the facts according to their own mischaracterizations and ignore discrimination law where intent is the central issue. A plaintiff in an employment discrimination case may defeat summary judgment by pointing to "**evidence of inconsistencies and implausibilities** in the employer's proffered reasons for discharge…" <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893 at 900 (3d Cir. *en banc*) *cert dismissed,* 483 US 1052 (1987)(emphasis added).  Moreover in <u>Fuentes v Perkasie</u>, 32 F.3d 759, 762, 764-5 (3d Cir. 1994) the court held plaintiff need not cast doubt on each and every articulated reason that the defendant proffers. <u>Id.</u> at 764.  Rather, the court held when the defendant proffers a "bagful" of legitimate reasons, and plaintiff manages to cast substantial doubt on a fair number of them, plaintiff may not need to

discredit the remainder.[1]  That is because the fact finder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a fact finder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.  Id. at 764-5, n. 7.

Mr. Cashman submits there is sufficient evidence of inconsistencies and implausibilities on this record, viewed in light most favorable to plaintiff, which would allow a reasonable jury to infer that Defendants asserted reason for terminating him are pretextual. Id.

## A.    Plaintiff Cites Evidence To Support Material Disputed Facts

Defendants incorrectly assert that Mr. Cashman has no record evidence in his Statement of Material Facts. Defendant refers to certain facts but does not explain how they are unsupported by the record. Mr. Cashman painstakingly cites the record. While Defendants disagree with the facts, they cannot deny the inconsistencies.

## B.   CNAF Is An Essential Party As Its Officers Directed Plaintiff's Forced Retirement

CNAF is the parent holding company of Continental Casualty Co. (CCC) which owns National Fire Ins.Co. of Hartford, Transcontinental Ins. Co. and Valley Forge Life Ins. Co. collectively known as "CNA."  CCC registered the CNA mark in 1966 with the U. S. Patent and Trademark Office. In 1973 the mark was assigned to CNAF.  CNA Financial Corp. v. Brown, 162 F. 3d. 1334 (11th Cir. 1998).[2]  CNAF now seeks to recast its published 510K report, which says it has 9,000 employees. CNA deceptively frames the issue arguing CNAF cannot be held liable for conduct of CCC employees. That's not the issue. There was *direct involvement of CNAF officers* in Cashman's forced retirement at age 59.[3]   When Cashman rescinded his retirement email, his boss (Wolfe) sent it to CCC HR Director Mansfield, who sent it to CNAF's VP Liapes asking, **"Do you have any insight into if we are obligated to accept his rescinding**

---

[1] Falsus in unos, falsus in omnibus.
[2] The District Court imposed Rule 11 sanctions against CNAF in CNAF's suit over Brown's use of the CNA service mark. On appeal the Rule 11 sanctions were reversed but judgment for Brown was affirmed.
[3] CNAF sponsors the CCC Retirement Plan under which Cashman was forced out of his job at age 59.

of his retirement notice? . . ." **(Ex. 80)** and CNAF VP Liapes  answered, "I will call you . . .to

discuss." Mansfield emailed Liapes again **(Ex. 82)** asking how to respond to Cashman's assertion

"he was told by [our] retirement people he could change his mind up to ...his retirement date."

VP Liapes answered **(Ex. 85),** "… Please just copy Tim [Wolfe] and just respond, *'As I*

*communicated to you…CNA has honored your original decision to leave CNA. Your last day will*

*continue to be November 3rd.' "* Mansfield did. On November 3, 2006 Leslie Curran, local HR

manager, called CNAF's VP Nutley, who ordered Cashman via speakerphone to leave CNA.**(Ex.**

**I, Nutley p.25)** Liapes called Cashman on Nov. 6 **(Ex. 94)** to say she would investigate his age

claim. CNAF officers forced Plaintiff to retire and is an indispensable party.

## C.    Plaintiff Can Establish Pretext By Evidence Of Record
### 1.  Unrefined Statistics Can Be Considered As Evidence of Pretext

Defendants ask the court to ignore the holding of <u>Bruno v. W.B.Saunders</u>, 882 F.2d  760 (3d

Cir. 1989), where the Third Circuit held that statistical evidence of the lack of promotions of the

protected age group to support pretext in a termination case was proper:

> In individual disparate treatment cases such as this, statistical evidence, which "may be
> helpful, though ordinarily not dispositive," *Id. at 710*, need not be so finely tuned…a
> general rule requiring that all statistical evidence account for minimum objective
> qualifications would not be broadly useful…. we conclude that the studies are
> "relevant…" …they meet the requirement of *Federal Rule of Evidence 401* that they
> "make the existence of any fact that is of consequence to the determination of the action
> more probable or less probable than it would be without the evidence." *Fed.R.Evid. 401.*
> *Compare McDonnell-Douglas, 411 U.S. 792 (1973) at 804-05* (defendant's policy and
> practice with respect to employment of protected class relevant to showing of pretext).

Plaintiff relies upon Defendants' own evidence of terminations to show that older workers

over 40 years of age have been displaced in the defendants' workforce. **Ex. 118, 118A, B,C**.

Defendants produced the data pursuant to court order after plaintiff moved to compel the

statistical data of terminations of older employees in the SIU. (Dkt #59). The court limited

plaintiff's discovery to the SIU unit and ordered production of the data regarding SIU

investigators similar to plaintiff.  While defendants view the statistics differently, there is no

doubt that the SIU investigators over 40 years of age were terminated in large number.  As in

Bruno, the court should reject Defendant's argument that the data is not proper evidence of pretext.

### 2.  Wolfe's Testimony About the Deleted Spreadsheets Is Not Credible

Ten months after Wolfe was deposed (May 20, 2009), on March 17, 2010, Defendants produced what appear to be incomplete spreadsheets for 2006 with no compliance percentage for Cashman. **Ex. 119**  Discovery closed in July 2009.  Defendant cites nothing in the record to support its baseless assertion that "Wolfe testified …that he deleted spreadsheets after he transferred the data they included onto Productivity Reports."  On the contrary, Wolfe testified,

> Q.     Now, yesterday during Mr. Cashman's deposition, we saw a lot of file reviews that talked about -- I think the standard was supposed to be a 95 percent compliance rate, and there were percentages calculated like 91.67 percent or 97.38 percent. How do you reach those numbers? What's the calculation?
>
> A.     I put together Excel spreadsheets with certain criteria commensurate with the expectations for each of the investigators, formally were put into those spreadsheets, and on a monthly basis, I would review six files for each member of my team. Following the review of each claim file, I would enter data into the spreadsheets depending upon whether an employee had, you know, met or fell in short of the expectation, and the percentages were calculated automatically for me out of the spreadsheet.
>
> Q.     These Excel spreadsheets, do they still exist?
>
> A.      No.
>
> Q.     They have not been provided to us.  I've never seen one.  What's on them?
>
> A.     What's on them?  Well, nothing right now because I don't have the ones from  2005.
>
> Q.     What happened to them?
>
> A.     **They must have been deleted**.  **(Ex.K N.T.26:13-27:18)**
> **…..**
>
> Q.      Okay.  Going back to the Excel spreadsheet that you were talking about that had the criteria on them, I think you said they were not deleted in 2006; is that correct?
>
> A.        I should have told you I couldn't remember exactly when they were deleted, but because I put the spreadsheets together throughout 2006, it's unlikely that I would have deleted them before the year was out.
>
> Q.     Do you know whether you deleted them in 2007?
>
> A.      It's possible.  I don't know for sure.
>
> Q.     Do you know whether you deleted them after June of 2007?

A.      **Halfway through**.  I don't know. I can't recall the date.  I don't recall actually doing that.  **Ex. K N.T.54:6-24**

James Bonk, former SIU Director, was subpoenaed for deposition in Chicago in June 2009, at plaintiff's great expense. Bonk received a subpoena on May 29, 2010 for "any documents in your possession relating to plaintiff, his performance/production including but not limited to Excel spreadsheets received from Wolfe." **Ex. 120**. Defendants only produced some documents responsive to the subpoena on June 18, 2009 at the deposition. Initially, Mr. Antonelli objected to questions about the documents. **Ex A Bonk 9:4-8**.  Mr. Bonk admitted that the documents pertained to Mr. Cashman's employment.  **Ex A Bonk NT 8: 17-9:18, 10: 3-21**. Mr. Antonelli represented that the voluminous documents produced at Bonk's deposition were obtained from a disc containing thousands of documents which was produced by Mr. Tim Wolfe about eight days after Wolfe's deposition which took place in Reading, Pennsylvania on May 20, 2009. **Id**. **16:10-17:21**.  Bonk testified that *he got the documents from his computer, documents which he took from CNA.*  **Id at 23**. When asked why he kept the defendants documents Bonk testified, "I maintained some documents because I was the last official record keeper of the department…I had taken everything that I had in my possession, had Information Technology make a complete copy of everything that was on my computer, and that CD was then provided to Tim Wolfe who is my successor." **Ex A**, **22:24-23:17**. Bonk further testified,

> Q. Do you recall ever having any Excel spreadsheets from Mr. Wolfe concerning performance evaluations of people he supervised?
> A. I believe I produced those.  (**Ex A. 23:18-23**.)

But CNA withheld them.[4] Defendants did not produce the CD. They were produced ten months after Wolfe's deposition on March 9, 2010 with no compliance percentages for Cashman. **Exhibit 119B**. Wolfe still could have deleted them in their original form. Defendants did not produce these documents during discovery and waited until *after* key depositions were

---

[4] On March 8, 2010, defendants produced the 2006 incomplete spreadsheets claiming; "CNA recently learned for the first time that James Bonk was in possession of certain emails and documents he erroneously believed were contained on the CD from which CNA produced documents last June." **Ex. 119**.

completed, ignoring the subpoena directed to Bonk, and document requests directed to defendants.  It is incredulous that Defendants should now say they just found them! "Bonk erroneously believed they were contained on the CD from which CNA produced documents last June." **Ex. 119**.

### 3.   CNA's Own Productivity Reports Contradict The PIP

CNA argues that Mr. Cashman cannot show contradictions regarding the PIP.  This is not so. Mr. Cashman relies on *Defendants' own records* showing his 2006 productivity (**Ex. 35C**).  The PIP falsely states that Mr. Cashman's cycle time for June 2006 was **31** days, clearly in contradiction of the SIU spreadsheet showing his cycle time was **22** days.  Moreover, the PIP is totally silent on the compliance percentages, which are a subjective measure of his performance. **Ex. 72**.  Since Mr. Cashman is able to contradict these critical items of his performance, CNA now raises new arguments to "explain" Mr. Cashman's good closure ratio.  His closure rate is "artificial[ly]" good because he was closing the cases before the reports are finalized and invoiced.  Basically, CNA tells this court that its own reports  are inaccurate!  This argument is incredulous and can be rejected by a jury based on Defendants' production records, **Exhibit 35C**, showing Mr. Cashman's good closure rate.  Numbers don't lie.

Defendants argue that Mr. Cashman's performance was not based on statistics alone but that his work quality was poor.  Mr. Cashman has submitted evidence that Wolfe agreed with Cashman's assessment of files.  Many of these involve rejection of cases for fraud investigation, which did not have "red flags" where Wolfe agreed with Cashman's rejection.  These are inconsistent with Wolfe's criticism, <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 900.  See Plaintiff's Brief at p 18-20.  A plaintiff may meet his burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or indirectly by showing that the employer's proffered explanation is unworthy of credence*" thus showing that the

proffered reason is subject to factual dispute.  Chippolini v. Spencer Gifts, Inc., 814 F.2d at 898, and cases cited therein (emphasis added).

**4.  A Jury May Consider The Change of Evaluation As Evidence of Pretext**

Defendants argue that Wolfe's lowering of Cashman's evaluation from "2" to "3" is not evidence of pretext because if Wolfe wanted to discriminate against Cashman he would have also lowered the older McClarren and Benson's evaluations as well.  Defendants argument failed in Reeves v. Sanderson Plumbing, 530 U.S. 133 (2000), an age discrimination case and in Goosby v Johnson, 228 F.3d 313, 320 (3d Cir 2000)("an employer does not have to discriminate against all members of a class to illegally discriminated against a given member of that class").  In Reeves, defendant argued that no inference of age discrimination should exist when defendant does not discriminate against other older employees. Id. at 153, citing Furnco Constr. Corp v. Waters, 438 U.S. 567 (1981) at 580 (evidence that employer's work force was racially balanced, while "not wholly irrelevant," was not "sufficient to conclusively demonstrate that [the employer's] actions were not discriminatorily motivated"). See also, Steward v Sears, Roebuck and Company, 312 F. Supp.2d 719 (E.D.Pa. 2004).  It is undisputed that Wolfe only changed the older, cancer-afflicted plaintiff's evaluation and a jury may consider this fact.

**5.  CNA's Turnover Policy May Be Considered As Evidence of Pretext**

Defendants mischaracterize Mr. Cashman's argument about its turnover policy of trying to force out older employees. Defendants allege that Mr. Cashman believes Wolfe was rewarded for forcing him out. Mr. Cashman argues that Defendants' turnover policy targets older employees and that Wolfe was rated favorably in this area of his yearly review.   Wolfe was appointed interim director from November 2006 until July 2007, when he was officially promoted to SIU Director.   **Ex K 35:6-25**. Discovery reveals that Wolfe's 2006 evaluation included a rating for achieving "10% annual voluntary turnover" and he achieved an overall rating of "1" or exceeds requirements. **Exhibit 107**. Wolfe's  2005 evaluation shows that he had

three voluntary turnovers, including a retirement, an employee in a performance improvement plan and one who resigned shortly after staff reductions.  **Ex. 106**.

**6.  A Reasonable Jury May Consider 39 Year Old Breit As Mr. Cashman's Replacement**

Defendants wrongly state that Mr. Cashman's only evidence that Breit was his replacement is that Wolfe did not expect Cashman to make the PIP (performance improvement plan). This is not so.  Mr. Cashman points to more evidence of record that may lead a jury to make the conclusion that Breit replaced him including but not limited to, in July 2006 Traina (then Manager of Major Investigations) advised Breit that a job would be open, to be on the look out, that Breit had been laid off just the year before, an organizational chart with Cashman's name crossed out and Breit's name in his place, the announcement of Breit's rehire the day before Cashman's PIP, Wolfe's statement to Cashman that we have time to bring Doug up to speed before we cut you off, Curran's testimony that if he was hired, Breit would have received some of Cashman's work (See page 6, Plaintiff's Opposition and citations to record).  Mr. Wolfe's *post hoc* chart only shows that Breit and others may have assumed some of Cashman's files.  A jury may rely on the evidence that two of the employees assuming plaintiff's work, Picard (ten years younger) and Breit (twenty years younger) were sufficiently younger to establish the prima facie case. Steward v. Sears, Roebuck & Co., 231 F. Appx 201 (3d Cir. 2008) citing Sempier v. Johnson & Higgins, 45 F.3d 724 (3d  Cir.1995),Whittington v. Nordham Grp. Inc., 429 F.3d 986, 993 (10th Cir. 2005).

Wolfe's statement that plaintiff may use his illness as an excuse may be considered as evidence of disability discrimination. Eschelman v Agere Systems Inc 397 F.Supp. 2d 557 (E.D.Pa. 2005), affirmed 2009 US App. LEXIS 1947 (3d Cir. 2009). Wolfe informed HR Director Mansfield on September 6, 2006 before the PIP that Mr.Cashman "continues to have health issues following his most recent course of chemotherapy…" **Ex. 121**.While Defendants

argue, "Wolfe was simply articulating the excuses he thought Cashman might make upon learning of the PIP," a reasonable jury may find that Wolfe regarded plaintiff as disabled.  Id.

**7.  A Jury May Consider That Mr. Cashman Disputes Alleged Performance Problems**

In Brewer v. Quaker State Oil, 72 F.3d 326, 329 (3d Cir. 1985), the Court held that summary judgment was not appropriate where plaintiff disputed the significance of the problems cited by the defendant, that he had succeeded in his job for several years having received fully acceptable ratings, and by providing evidence of the bonus he received for surpassing his performance goals. The Third Circuit reversed summary judgment for the employer, "it is not the court's role to weigh the disputed evidence and decide which is more probable." Id  at 331.  Plaintiffs in Brewer, demonstrated that defendant was "nitpicking" at his performance in the areas of customer complaints, submitting reports and communication and organization, and that the alleged problems were the result of petty misunderstandings, or were not really problems at all. Id. at 329. Here, as in Brewer, plaintiff shows that Wolfe's criticism of his performance is disputed by his performance record from 1995-2006, the productivity reports, the bonuses he received in 2005 and 2006, and his refutation of the alleged criticism of his performance (p. 18-20 Plaintiff's Opposition), the change in his rating, the fact that Wolfe only supervised for less than two months in 2005. Refutation means "the act of refuting a statement, charge, disproof." American College Dictionary, 1970 p. 1019. A jury may consider Mr. Cashman's refutation of Wolfe's criticism pursuant to Brewer, Id., and Sorba v. Pennsylvania Drilling Company, 821 F.2d 200 (3d Cir. 1987), cert. denied, -U.S-; 108 S.Ct. 730 (1988)(plaintiff's evidence that he did not complete assignments for reasons beyond his control constituted evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge which *could* support an inference that the employer did not act for nondiscriminatory reasons he claims that factors beyond his control were responsible) citing  Chipollini v. Spencer Gifts, 814 F.2d at 900.

**8.  Statements of Non-Decisionmakers Can Be Considered As Evidence of Pretext**

Defendants ignore <u>Ryder v. Westinghouse,</u> 128 F. 3d at 132 (1997) where the Third Circuit held ageist comments by *unidentified* Westinghouse executives a year after Plaintiff's termination by persons *who were not involved*, were admissible as statements of managerial attitudes or the corporate culture of the company. <u>Id</u>. at 132. <u>Reeves v. Sanderson Plumbing Co</u>., 530 U. S. 133 (2000) held a remark by a *non-decision maker* that Reeves came to America on the Mayflower, and he was "too damn old to do the job" were relevant to the corporate culture. Lilienthal was the CEO and Chairman, the officer in charge of the company who sets policy and direction. Keith is a VP of Employee Relations reporting to Lilienthal. They are managers and executives. Claims Manager Joseph Godal heard Lilienthal speak about <u>the future of the company being with young people</u>. **Ex 121 Godal 19:7-14, 28:3-25**.[5] While Defendants attempt to compartmentalize Godal and Hammel's testimony, Mansfield testified that SIU is part of the Claims organization. **Ex. G 18:4-6**.

**9.  A Jury May Consider Wolfe's Comment "It Gets Tough As You Get Older"**

Senior VP Liapes interviewed Mr. Cashman on November 6, 2006 three days after his forced retirement and recorded that Cashman told her that Wolfe said, "**it gets tough as you get older**." **Ex F 33**, **Ex.  94**. Liapes was asked if she responded [to Cashman]. She responded, "No..since I wrote Tim, and that was sort of an extra note here, I would have thought I said, Who would have said that? Because that would have struck me as problematic."  Whether the word is tough or hard is insignificant but the meaning is the same, and a jury may consider the comment as evidence of age bias.  <u>Steward v Sears, Roebuck & Co.,</u>  312 F. Supp. 2d 719,  231 F. Appx 201.

---

[5] Defendants' management system encouraged older workers to be "managed out" according to former Claims Manager Hammel. **Ex 115 ¶10,11.** VP Keith told his colleague, VP Lori Komstadius that "someone should mention to [Lilienthal] that he should use terms a little bit more accurate than he portrayed there." **Ex 113 95:9-97:12.**

## II. CONCLUSION

For all the above-mentioned reasons, as well as the evidence of record cited in Plaintiff's

Opposition, Plaintiff respectfully submits that this Court deny defendants motion in its entirety.


7/6/10                              Respectfully submitted,

                                   /s/

                                   _____
                                   Carmen R. Matos, Esquire, PA I.D. No. 32795
                                   Anita Alberts, Esq. PA ID 28086
                                   40 East Court Street, 3d Floor
                                   Doylestown, PA 18901
                                   215-345-8550
                                   215-345-8551
                                   crmatoslaw@aol.com
                                   afalawyer@comcast.net
                                   Attorneys for Plaintiff
                                   Mr. John Cashman

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the following legal papers were served upon:

Richard J. Antonelli Esq.                  Anita F. Alberts, Esq.
Rebecca Dick-Hurwitz, Esq.              40 East Court St, 3d Floor
Babst, Calland, Clements & Zomnir PC    Doylestown, PA  18901
Two Gateway Center, Eighth Floor
Pittsburgh PA 15222


in the following manner:

<u>Legal Papers</u>:                        Plaintiffs' Surreply Brief in Opposition to Defendant's
                                            Motion for Summary Judgment, Exhibits 119, 120, 121
                                            Certificate of Service


<u>Manner</u>:                             ECF 7/6/10


                                            /s/
Date:   July 6, 2010            By:_____
                                            Carmen R. Matos, Esquire
                                            crmatoslaw@aol.com
                                            Attorney for Plaintiff
                                            Mr. John Cashman